IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>TIMOTHY SCOTT BISHOP,<br><br>Defendant/Movant. | Cause No. CR 17-88-BLG-SPW<br>CV 19-30-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Timothy Scott Bishop's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Bishop initially filed his motion *pro se* but is now represented by appointed counsel Nancy G. Schwartz.[1] The United States is represented by Assistant United States Attorney Lori Harper Suek.

## I. Background

On July 17, 2017, Montana Highway Patrol Trooper Robbins stopped Bishop for speeding. Another officer, Trooper Mees, arrived to assist, along with his drug dog, Saar. The stop terminated in impoundment of Bishop's vehicle. Robbins applied for and obtained a warrant to search the truck. Inside the pocket

---

[1] Counsel's amended motion supersedes Bishop's *pro se* submissions. *See* Order (Doc. 86) at 1.

1

of the driver's side door, he found about 26 grams of methamphetamine.

On July 24, 2017, a grand jury indicted Bishop on one count of possessing a substance containing a detectable amount of methamphetamine with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1). On September 25, 2017, attorney Lance Lundvall was appointed to represent Bishop. *See* Order (Doc. 14).

Bishop and the United States reached a plea agreement. On February 15, 2018, Bishop pled guilty in open court. He was released pending sentencing. *See* Minutes (Doc. 29); Release Order (Doc. 31).

Bishop absconded for about two months. He was taken into custody on June 8, 2018. *See* Sealed Warrant (Doc. 37); Docket Entry 06/08/2018.

The methamphetamine in Bishop's truck was 99% pure. At sentencing, the Court found a base offense level of 26. Bishop received a two-point upward adjustment for obstructing justice, due to his escape, and earned no credit for accepting responsibility. With a total offense level of 28 and a criminal history category of III, the advisory guideline range was 78 to 97 months. *See* Presentence Report (Doc. 52) ¶¶ 22–30, 48–49; Statement of Reasons (Doc. 51) at 1 §§ I(A), III. Based solely on the need to avoid disparity with other defendants sentenced for possessing a small amount of methamphetamine, the Court varied downward to a sentence of 60 months in prison, to be followed by a three-year term of supervised release. *See* Statement of Reasons at 4 § VIII; Judgment (Doc. 50) at

2

2–3.

Bishop did not appeal. His conviction became final on August 22, 2018. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Bishop timely filed his initial § 2255 motion on March 23, 2019. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988). The parties contest the timeliness of the amended motion, but it is more efficient to decide Bishop's claims on the merits.

## II. Analysis

Bishop alleges that his trial counsel was ineffective. His claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). He must show (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687–88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

As Bishop points out, the only evidence against him came from the search of his truck. The Court agrees that all reasonable defense lawyers would have recognized that fact and would have considered whether a motion to suppress was worth pursuing.

Bishop claims counsel should have recognized that Trooper Robbins' warrant application failed to include any information demonstrating that Trooper

3

Mees knew how to handle a drug dog and that Saar was a reliable indicator. *See* Am. Mot. (Doc. 95) at 6–11. He also points out that the United States' pretrial discovery apparently did not contain the warrant application, so there is reason to believe counsel did not even review it. *See id.* at 10–11, 14; Discovery Index (Doc. 102-1) at 1–2. And Bishop presents an expert report suggesting the officers' manner of handling the scene prompted Saar to alert. *See* Capp Report (Doc. 102-3) at 1–3.

### A. Relevance of the Warrant Application

Had the validity of the search depended on the warrant, any failure by counsel to review the application would certainly be unreasonable. But the validity of the search did not depend on the warrant application.

Under federal law, "a police officer may conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime." *United States v. Johnson*, 913 F.3d 793, 801 (9th Cir. 2019). Montana state law does not recognize this "automobile exception," *see State v. Elison*, 14 P.3d 456, 470–71 ¶ 54 (Mont. 2000), so Trooper Robbins seized Bishop's truck in order to apply for a warrant to search it.

The basis for seizing the truck was exactly the same as the basis for searching it—that is, Robbins did not seize it because it was not roadworthy or was stolen, then do additional investigation, then apply for a warrant to search it. If

4

Robbins had probable cause to search the truck when he seized it, a later-issued defective warrant could not—under federal law—give rise to a motion to suppress. So, even assuming trial counsel did not review the warrant application, that would not help Bishop to prevail on a *Strickland* claim.[2]

## B. Evidence of Saar's Reliability

The heart of Bishop's claim is that the warrant application was defective because it did not contain any information about Saar's reliability as a drug dog. The argument suggests that *Florida v. Harris*, 568 U.S. 237 (2013), requires some evidence of a drug dog's reliability to be included in every warrant application. *See, e.g.*, Am. Mot. (Doc. 95) at 12–13 (citing *Eckert v. City of Deming*, No. CIV 13-0727 JB/WPL (D.N.M. Oct. 31, 2015)).

Even though the warrant application is not central to the case, this argument must still be considered. If a search warrant application must contain specific information demonstrating a drug dog's reliability, an officer in the field assessing whether he has probable cause to search a vehicle without a warrant must also have similar information at his fingertips to help him decide whether a drug dog is reliable. Otherwise, the law would say, in effect, that a search warrant must be supported by more information and meet a higher standard of probable cause than

---

[2] Counsel should look at everything. For instance, the warrant application might offer materially different facts than Robbins' report, suggesting a need for further investigation. But Bishop does not suggest anything like that happened.

a warrantless search. The Court does not believe *Harris* requires either of these things.

In *Harris*, a K-9 officer named Wheetley stopped the defendant, Harris, for an expired license plate. Harris was "'visibly nervous,' unable to sit still, shaking, and breathing rapidly," and he had an open can of beer in the truck's cupholder. Wheetley let his drug dog, Aldo, take a "free air sniff." Aldo, trained to detect various drugs including methamphetamine, alerted on the driver's side door handle. Wheetley searched Harris's vehicle. He did not find methamphetamine or any other drugs Aldo was trained to detect, but he discovered a whole lot of ingredients for making methamphetamine. Harris was arrested, charged with possession, and released pending trial. Some time later, Wheetley stopped Harris again for another vehicle violation. Again, Aldo took a sniff, and again he alerted, and again Wheetley searched the vehicle. This time, however, he did not find anything. *See Harris*, 568 U.S. at 240–41.

Harris filed a motion to suppress in the possession case, asserting that Aldo alerted when there was nothing to be detected and so could not provide probable cause. In direct examination at the suppression hearing, Wheetley testified about his and Aldo's training. Harris's cross-examination contested Aldo's certification and his performance in the field. Wheetley acknowledged that Aldo's certification had expired. He also explained that he did not keep records of all of Aldo's work,

only his work resulting in arrests. *See id.* at 241–42.

The trial court found probable cause and denied the motion to suppress, but the Florida Supreme Court reversed. It required the State to present "the dog's training and certification records," explain "the meaning of the particular training and certification," provide "field performance records (including any unverified alerts)," and present "evidence concerning the experience and training of the officer handling the dog, as well as any other objective evidence known to the officer about the dog's reliability." *Harris*, 568 U.S. at 242–43.

The Florida court's ruling prescribed an "inflexible set of evidentiary requirements," *id.* at 248, the State would have to meet in "a probable-cause hearing focusing on a dog's alert," *id.* at 247. Neither the Florida courts nor the Supreme Court said anything about warrant applications or officers' field determinations of probable cause. Further, *Harris* put the focus squarely back on "the 'flexible, common-sense standard' of probable cause," *Harris*, 568 U.S. at 240 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)), emphasizing its "fluid concept—turning on the assessment of probabilities in particular factual contexts— not readily, or even usefully, reduced to a neat set of legal rules," *id.* at 244 (quoting *Gates*, 462 U.S. at 232).

Just as judges reviewing applications and officers in the field must have some reason to believe an anonymous tipster is a competent witness, *see, e.g.*,

*Gates*, 462 U.S. at 233–35, they must have some reason to believe a drug dog will alert when drugs are present and not when they are absent. The reason for this belief need not take the form of certification or training or any other specific touchstone. Wheetley probably thought Aldo was reliable because he had knowledge of Aldo's training and experience. But for most officers in the field, who do not have that knowledge, the fact that a dog and uniformed officer are a K-9 unit the department has put on the streets is some indication that the pair know what they are doing. Of course, if Trooper Robbins thought Saar was unreliable, he could not consider her alert when he decided whether to seize the truck. But these are the same sorts of decisions officers and judges make all the time, about witnesses and about other officers.

As this Court reads it, *Harris* is a reiteration of *Gates*. Judges and law enforcement authorities need some reason to think a drug dog is reliable, *see Harris*, 568 U.S. at 247, but if the defendant thinks otherwise, a motion to suppress puts the burden on the government to prove the K-9 unit contributed competent information that, taken together with all other relevant facts, established probable cause for a search. "In short, a probable-cause hearing focusing on a dog's alert should proceed much like any other." *Id.* at 247. J

### C. Probable Cause

*Harris* differs from this case. Aside from Aldo's alert, all Wheetley had was

a nervous driver and an open can of beer. Not only was Aldo's reliability the key ingredient of probable cause, but his alert on the second occasion, when Wheetley found nothing, also provided reason to question his reliability.

Trooper Robbins had significantly more information than Wheetley. The plates on the truck belonged on a different vehicle, possibly indicating an intent to evade easy identification. *See* Robbins Report (Doc. 70-1) at 7 para. 2. Bishop had been speeding. *See id.* at 6–7. His eyes were "extremely blood shot" and his breath smelled of alcohol, but he said he had "a drink earlier," and he had no horizontal gaze nystagmus. *See id.* at 7 paras. 2, 3, 6. Together with other facts, these facts might suggest Bishop was high. Bishop had been stopped on January 1, 2017, 16 days earlier, and found in possession of a stolen handgun. *See id.* at 7 para. 5. Bishop gave a few different accounts of where he was going and why, but he consistently said he and his passenger were going on from Forsyth to Baker. *See id.* at 7 para. 5; *id.* at 8 para. 1. The passenger had a small zip-top bag of marijuana in the purse she allowed the troopers to search. *See id.* at 4. She said she was just "along for the ride" with Bishop to Forsyth and had "no idea" Bishop intended to go on to Baker. In fact, she had to return to Billings, because she had to pick up her kids at 2:00 p.m. *See id.* at 7 paras. 6, 7; *id.* at 8 para. 4. Dispatch told Trooper Robbins that Bishop had a prior drug trafficking conviction. *See id.* at 7 para. 8. And Trooper Mees told Robbins that Saar alerted at the driver's side

door on her second pass around the vehicle. *See id.* at 8 para. 1.

A reasonable criminal defense lawyer could believe that a federal judge, taking all these facts together, would find that Trooper Robbins had probable cause to believe he had interrupted Bishop in the middle of a drug run to Forsyth. Other criminal defense lawyers might disagree and work up a motion to suppress. But where there is room for reasonable disagreement, counsel's performance falls within the broad range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689–91.

### D. Expert Witness

Bishop proffers the report of an expert witness who would testify that Trooper Robbins appeared to be "setting up" the scene by leaving the driver's side door slightly ajar and that Trooper Mees followed suit in the way he handled Saar. The expert's report indicates these actions made Saar's alert unreliable. *See* Capp Report (Doc. 102-3) at 1–3.

But the question is whether all reasonably competent defense counsel would have engaged an expert witness to evaluate Saar's performance. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 106–08 (2011). The answer to that question is no. The information presented in Trooper Robbins' incident report appears adequate to support probable cause. Bishop does not point to any additional information in counsel's possession, such as Aldo's fruitless second search, that

should have prompted him to question whether Saar was reliable or whether the officers "set up" the scene. For that reason, trial counsel's "reasonable professional judgment[]" that Trooper Robbins had probable cause "support[ed] the limitations on investigation." *Strickland*, 466 U.S. at 691.

Bishop presents a reasonable course of action a lawyer might have decided to take in his defense. The existence of other reasonable and possibly even successful approaches does not mean trial counsel's course of action was unreasonable.

### E. Conclusion

While Bishop identifies a reasonable alternative strategy, the existence of a different approach does not show that trial counsel performed unreasonably. *See Strickland*, 466 U.S. at 689. Competent defense counsel could have believed Trooper Robbins had probable cause to believe Bishop was engaged in drug trafficking. "[T]here is no reason . . . to address both components of the [*Strickland* test] if the defendant makes an insufficient showing on one." *Id.* at 697. Bishop cannot show a violation of his Sixth Amendment right to effective assistance of counsel.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could find that Bishop presents a reasonable alternative to trial counsel's strategy. Reasonable jurists might also find a reasonable probability the alternative strategy would succeed, since a reasonable probability is less than a preponderance of the evidence. But reasonable jurists reviewing Trooper Robbins' incident report would acknowledge that reasonable criminal defense attorneys could find it established probable cause. The existence of an alternative strategy does not prove trial counsel's strategy was unreasonable.

There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS ORDERED:

1. Bishop's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 95) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately

12

process the appeal if Bishop files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 19-30-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Bishop.

DATED this 16th day of June, 2020.

Susan P. Watters
United States District Court